```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------- x
UNITED STATES OF AMERICA,               :
                                        :        18-cr-579 (JSR)
            -v-                         :
                                        :
SEBASTIAN PINTO-THOMAZ &                :        OPINION AND ORDER
JEREMY MILLUL,                          :
                  Defendants.           :
--------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

Now before the Court are the motions of co-defendants Sebastian Pinto-Thomaz and Jeremy Millul for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). See Memorandum of Law in Support of Sebastian Pinto-Thomaz's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A), 18-cr-579-1 (JSR), ECF No. 180 (Mar. 30, 2020) (hereinafter "Pinto-Thomaz's Mot."); Defendant Jeremy Millul's Memorandum of Law in Support of Motion for Release Under 18 U.S.C. 3582(c)(1)(A), 18-cr-579-3 (JSR), ECF No. 179 (Mar. 30, 2020) (hereinafter "Millul's Mot.").

Both men are serving sentences for the crime of insider trading and are due to be released later this year. Mr. Pinto-Thomaz was convicted at trial in April 2019 of two counts of conspiracy to commit securities fraud and two counts of substantive securities fraud. He began serving a fourteen-month sentence at FSC Otisville on October 1, 2019, and his

1

anticipated release date is September 27, 2020. Mr. Millul pled guilty to one count of conspiracy to commit securities fraud. He began a five-month incarceratory sentence at FCI Allenwood on January 6, 2020, and his anticipated release date is June 4.[1] In the case of each of these defendants, the sentence imposed by the Court was well below the Guidelines range and was, in the Court's view, the bare minimum necessary to satisfy the mandate of 18 U.S.C. § 3553(a)(1).

Both defendants now argue that the coronavirus pandemic, viewed in light of the non-violent nature of their crimes and the short time remaining on their sentences, constitutes an "extraordinary and compelling reason[]," 18 U.S.C. § 3582(c)(1)(A)(i), to release them from custody and re-sentence them to home confinement for the duration of their earlier-imposed incarceration. Ultimately, the Court is not persuaded by their arguments.

This is not, however, because they have not yet exhausted their remedies before the Federal Bureau of Prisons (BOP) — specifically, the requirement that at least thirty days elapse between when they asked the BOP to release them and when they filed the instant motions. As the Court has recently explained

---

[1] See Judgment, No. 18-cr-579-1 (JSR), ECF No. 153 (July 29, 2019) (Pinto-Thomaz); Judgment, No. 18-cr-579-3 (JSR), ECF No. 152 (July 30, 2019) (Millul).

in detail, such a requirement is waivable in the circumstances presented by the COVID-19 crisis.[2] Rather, the motions are denied because, under the specific facts of each defendant's case, they do not rise to the "extraordinary and compelling" level required by the statute.

Unless a specific exception applies, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One such exception, which Pinto-Thomaz and Millul argue is here-applicable, is that:

> [U]pon motion of the defendant . . . [the Court] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . <u>extraordinary and compelling reasons warrant such a reduction</u> . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

<u>Id.</u> § 3582(c)(1)(A)(i) (emphasis supplied).

---

[2] Opinion and Order, <u>United States v. Haney</u>, 19-cr-541 (JSR), ECF No. 27 (S.D.N.Y. Apr. 13, 2020), at 4-12. Mr. Pinto-Thomaz filed his petition with the warden of FSC Otisville on March 23 and has not yet received an answer. Pinto-Thomaz's Mot. at 13-17. Mr. Millul made a formal written request to the warden of FCI Allenwood on March 30. He has also not received an answer, though Allenwood staff informed him in response to an earlier, oral request that he would be released but for the <u>pro forma</u> detainer issued by Immigration and Customs Enforcement (ICE), discussed <u>infra</u>. Millul's Mot. at 5-8. Neither defendant, therefore, has clearly satisfied the thirty-day waiting period of 18 U.S.C. § 3582(c)(1)(A), but the Court excuses this procedural failure on the reasoning described in <u>Haney</u>.

The referenced policy statement, found in U.S.S.G. § 1B1.13 Application Note 1, defines three specific sets of "extraordinary and compelling reasons," pertaining respectively to the medical condition of the defendant, id. Application Note 1(A), the age of the defendant, id. 1(B), and the defendant's family circumstances, id. 1(C), none of which are applicable to the instant defendants (as discussed in more detail below). However, the application note also sets forth a residual category of "other reasons," id. 1(D), defined only as "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."

Despite its vague language, the Court takes a liberal view of this residual category. The purpose of including such a category within the Sentencing Commission's policy statement can only be to clarify that the list of extraordinary and compelling circumstances in paragraphs (A) through (C) is not exhaustive. This Court therefore joins at least two others in this District in concluding that it has discretion to grant compassionate release motions on grounds that are distinct from, but of similar magnitude and importance to, those specifically enumerated in Application Note 1 to U.S.S.G. § 1B1.13. United States v. Lisi, 15-cr-457 (KPF), ECF No. 218 at 7-8 (S.D.N.Y. Feb. 24, 2020) (holding that courts may "independently evaluate

whether [a defendant] has raised an extraordinary and compelling reason for compassionate release"); United States v. Ebbers, No. 02-cr-1144 (VEC), ECF No. 384, at 9 (S.D.N.Y. Jan. 8, 2020) (describing the relevant Guidelines provision as "partly anachronistic," but "nonetheless[] helpful in defining a vague standard").

Nevertheless, in this Court's view, none of the circumstances that either defendant here identifies qualifies as a sufficiently "extraordinary and compelling reason" to resentence him to a period of home confinement. The crux of each defendant's argument is that incarceration under the present circumstances poses an unnecessary risk to his health. Specifically, both defendants point out that the crowded conditions inside federal prisons make "social distancing" impossible and that this, combined with the lack of sanitation supplies, promotes the spread of disease. See Pinto-Thomaz's Mot. at 5-7; Millul's Mot. at 2-3.

The Court recognizes that these concerns are serious and justified, and may warrant the BOP, in seeking to redress overcrowding, releasing non-violent defendants (like these two) who have only a few months left to serve. Indeed, the BOP has already taken steps in that direction. But it is hard to see how these circumstances make the situations of these two individuals "extraordinary" in terms of the statutory requirement, for in

these respects they are no different from a host of other prisoners.

It should also be noted that there is no evidence that Allenwood, where Millul is housed, is currently experiencing widespread transmission of COVID-19. As of today, FCI Allenwood, which houses 1,236 prisoners, has recorded no confirmed cases of prisoners who have contracted the virus and only one case among its staff.[3] COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (Last Accessed Apr. 13, 2020). Moreover, as this Court has elsewhere observed, see Haney, No. 19-cr-541 (JSR), at 14-16, the BOP has implemented various protocols to stem the threat of infection within its facilities. While not without criticism, the BOP's response has at least included a mandatory fourteen-day quarantine for newly arriving inmates and appropriate limits on visitation. And since the BOP implemented "Phase 5" of its coronavirus response plan on April

---

[3] There is also one case among the staff, but no prisoner cases, at neighboring USP Allenwood. In contrast to these numbers, Mr. Millul expresses concern that inmates from other facilities, potentially infected with the coronavirus, have recently been transferred to FCI Allenwood. Millul's Mot. at 3-4. He relies on letters sent to the BOP from Congressman Fred Keller and Senator Robert Casey, both of Pennsylvania, expressing concern about these transfers. Millul's Mot. Exs. 1 & 2. Specifically, Congressman Keller's letter states that two inmates transferred to Allenwood exhibited elevated temperatures and other symptoms. Id. Ex. 1. It is not clear, however, whether any such inmates have since tested positive for the coronavirus. Nor is it clear why such inmates would not be subject to the BOP's generally-applicable infection control protocols, described below.

1, inmates in every institution have been locked down in their assigned cells for fourteen days in order to decrease the spread of the virus. COVID-19 Action Plan: Phase Five, Federal Bureau of Prisons, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (Last Accessed Apr. 13, 2020); see also Government's Memorandum in Opposition to Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A), No. 18-cr-579 (JSR), ECF No. 184, at 6 (hereinafter "Gov. Opp.") (detailing the BOP's efforts).

FCI Otisville, where Pinto-Thomaz is housed (as he requested), is a closer call, with five reported cases among prisoners and five reported cases among its staff. But that still amounts to a small percentage of the total population of 673 inmates who reside at the facility, including both the correctional institution and the satellite camp.

Furthermore, while other courts have granted compassionate release motions for defendants who have medical conditions that increase their risk of experiencing more dire complications from COVID-19, e.g., United States v. Campagna, No. 16-cr-78 (LGS), ECF No. 135 (S.D.N.Y. Mar. 27, 2020) (immunocompromised defendant), neither of the instant defendants can point to strong evidence of such a condition. Mr. Pinto-Thomaz, by his own admission, is an otherwise-healthy thirty-four-year-old man. Pinto-Thomaz's Mot. at 7. Mr. Millul, thirty-five, has submitted

a letter from a doctor in his native France attesting that the defendant suffers from asthma, or at least did as a child. But the Court is somewhat skeptical about whether this condition continues to impact him. As the Government notes, Millul's Presentence Investigation Report, ECF No. 143, ¶ 25 (June 20, 2019), does not mention asthma or any other respiratory conditions and in fact states that "he has no current health concerns." Gov. Opp. at 2. Moreover, at the Court's suggestion, the Government examined the BOP's medical records for Mr. Millul, created during an intake screening and subsequent physical examination upon his arrival at Allenwood, and these records also fail to contain any reference to asthma. Government's Supplemental Memorandum in Opposition to Motion for Release from Custody, No. 18-cr-579-3 (JSR), ECF No. 187, at 1 (Apr. 9, 2020). Indeed, it appears that Mr. Millul first requested that the BOP amend his medical records to reflect a history of asthma just over one week ago, on April 3. Id. How convenient.

Mr. Pinto-Thomaz further argues that his situation is exceptional because he would be able to care for his elderly mother, who does face a higher risk of severe disease from COVID-19, upon his release from custody. Pinto-Thomaz's Mot. at 10-11. But this is also not an "extraordinary and compelling reason" for the Court to release him. First, the Court already

Case 1:18-cr-00579-JSR Document 189 Filed 04/13/20 Page 9 of 11

considered Ms. Pinto-Thomaz's relationship with her son as a mitigating factor when imposing the original sentence. Transcript of Sentencing Hearing, No. 18-cr-579-1 (JSR), ECF No. 154, at 43:10-17 (July 29, 2019). Moreover, the applicable Sentencing Commission policy statement describes certain "family circumstances" that constitute extraordinary and compelling circumstances for a defendant's release, namely "[t]he death or incapacitation of the caregiver of the defendant's minor child" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver." U.S.S.G. § 1B1.13 Application Note 1(C). Although at least one Court in this district has found this condition satisfied under somewhat broader circumstances, that is, where the defendant was the only caregiver for his seriously-ill mother, United States v. Lisi, 15-cr-457 (KPF), at 10-11, there is no suggestion here that Ms. Pinto-Thomaz's health is nearly so poor.

Finally, as to Mr. Millul, he points to two additional facts that, in his view, render his situation exceptional. First, since his incarceration began in January, he has been subject for much of the time to various lockdowns, both related and unrelated to the coronavirus, the effect of which has been to make the conditions of his incarceration unexpectedly "harsh." Millul's Mot. at 1 & 4. But as stated by the Court

-9-

considered Ms. Pinto-Thomaz's relationship with her son as a mitigating factor when imposing the original sentence. Transcript of Sentencing Hearing, No. 18-cr-579-1 (JSR), ECF No. 154, at 43:10-17 (July 29, 2019). Moreover, the applicable Sentencing Commission policy statement describes certain "family circumstances" that constitute extraordinary and compelling circumstances for a defendant's release, namely "[t]he death or incapacitation of the caregiver of the defendant's minor child" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver." U.S.S.G. § 1B1.13 Application Note 1(C). Although at least one Court in this district has found this condition satisfied under somewhat broader circumstances, that is, where the defendant was the only caregiver for his seriously-ill mother, <u>United States v. Lisi</u>, 15-cr-457 (KPF), at 10-11, there is no suggestion here that Ms. Pinto-Thomaz's health is nearly so poor.

Finally, as to Mr. Millul, he points to two additional facts that, in his view, render his situation exceptional. First, since his incarceration began in January, he has been subject for much of the time to various lockdowns, both related and unrelated to the coronavirus, the effect of which has been to make the conditions of his incarceration unexpectedly "harsh." Millul's Mot. at 1 & 4. But as stated by the Court

during oral argument on the instant motions, lockdowns are a routine fact of life for incarcerated defendants and are hardly extraordinary.

Second, Mr. Millul cites his immigration status. Because Mr. Millul is not a U.S. citizen, he is subject to a pro forma ICE detainer upon his release from BOP custody. Millul's Mot. at 5. The BOP has purportedly informed Mr. Millul that he would be released but for this ICE detainer, but ICE has apparently told him that they will not withdraw the detainer or hold a bond hearing until the completion of his federal sentence. Id. Millul's counsel refers to this situation as a "bureaucratic morass," but this too does not rise to the level of seriousness necessary for a grant of compassionate release. Again, the Court already considered Mr. Millul's immigration status as a significant mitigating factor at sentencing, justifying a sentence far below what the Court was originally inclined to impose. Transcript of Sentencing Hearing, No. 18-cr-579-3, ECF No. 156 at 26:3-13 (July 30, 2019). The same factor does not now compel a further reduction.

Accordingly, each defendant's motion for compassionate release is denied. Nevertheless, the Court recommends to the BOP, and in Mr. Millul's case, to ICE, that these agencies seriously consider these defendants as candidates for release under their administrative criteria. The Court does not view

either defendant as a flight risk or a danger to the community, and release may well be warranted under guidelines that are more lenient than the "extraordinary and compelling" standard that binds the Court.

    SO ORDERED.

Dated:   New York, NY
           April 13, 2020

_____
United States District Judge